## A. M. ERHARD V. CHARLES CALLAGHAN.

1. Where it is assigned as error that an answer of a witness, not responsive to the question, was admitted by the court below over objection duly interposed, but the question itself is not brought up in the transcript, this court cannot revise the ruling. To invoke the action of this court, the plaintiff in error must see to it that the transcript comprises all papers and proceedings necessary to show the force of the errors he assigns.

2. Where objection to a deposition was interposed in the court below and overruled there, and the admission of the deposition is assigned as error, but no reasons for the objection were disclosed to the court below, and none are presented here, the assignment of error will not be considered.

4. Parties may waive, either openly or tacitly, the provisions of the Statute of Frauds (Paschal's Digest, Arts. 3875, 3876) ; and if they have done so in the court below, they cannot avail themselves of the statute in this court.

APPEAL from Cameron. Tried below before the Hon. E. Basse.

Callaghan brought suit May 30, 1867, as a member of the late mercantile firm of C. Callaghan & Co., alleging that on December 24, 1864, in Matamoras one J. V. Dortigue, being indebted to C. Callaghan & Co. $832 73 in gold and silver coin, at their instance and request, paid over to Erhard the sum of $832 73

in gold and silver coin to the credit of C. Callaghan & Co. and for their use and benefit, which said sum the said Erhard promised to pass immediately to the credit of said firm of C. Callaghan & Co.

That said Erhard never credited said C. Callaghan & Co. in account with the said sum of $832 73 as promised, and never paid said sum or any part thereof to said firm nor to plaintiff, but has failed and refused to do the same, to the damage of plaintiff $500.

That the firm of C. Callaghan & Co. has been since dissolved, and plaintiff has become sole owner of said claim sued for.

Defendant filed first, a general demurrer; second, special demurrer, that the names of the firm of C. Callaghan & Co. were not stated; third, general denial; . fourth, *nil debet ;* and fifth, statute of limitations of two years.

Plaintiff amended, and alleged the firm of C. Callaghan & Co. to have been composed of himself and Thomas Dwyer, now of Bexar county.

The evidence in the case consisted of a deposition by J. C. Evins, a clerk of plaintiff, who proved that in 1864 C. Callaghan & Co. had an open account against J.-V. Dortigue for $832 73, and gave them a draft for the amount on A. M. Erhard, Matamoras, which was returned and not paid about October 7, 1864.

Witness took this and other accounts against Dortigue, and about December 20, 1864, met Dortigue on the street in Brownsville, and said to him his draft on Erhard had not been honored. They went to the house of Erhard in Matamoras on or about December 23, 1864, and Dortigue said to Erhard, pay to Mr. Evins the sum of $832 73, specie, and charge same to his account. He, Mr. Erhard, agreed to do so, and started to count out the money; witness stopped him and said as Callaghan & Co. had an open account with him, to credit the amount to their account, and Erhard agreed to do so, whereupon he and Dortigue retired and took a drink.

Subsequently, Callaghan told him the amount had not been put to his credit.   And in the Spring of 1866, he went again to see Erhard, who said he had no recollection of it, examined his books, and could find no charge to Dortigue nor credit to Callahan and Co. of the amount, though witness assured him the transaction had taken place in his own store room.   And witness again states, that although the money was not counted over and delivered to him, it was a moneyed transaction .between the three ; inasmuch as Dortigue ordered Erhard to pay him $832 73 and Erhard accepted to do so, and witness ordered said amount to be credited to account of Callaghan & Co., and he, Erhard, agreed to do so in the presence of J. V. Dortigue.

The witness says no one else was present.   The clerk of Erhard was not far away, waiting on a lady.

Plaintiff proved an account between Erhard and Callaghan & Co., running from 1864, signed by Erhard in 1866, in which this amount was not included.

Also, a draft drawn by C. Callaghan on A. M. Erhard, dated July 23, 1866, in favor of Thomas Gillighan or order, for $832 73, endorsed, " I decline to pay the within demand, not having any funds for account of Mr. Callaghan.        A. M. ERHARD."

The defendant introduced F. W. Heitmann, the chief clerk for Erhard from 1863 to 1865, who proved his entire ignorance of any such transaction as was testified to by Evins, and that he was never ordered to pass any amount on the books of Erhard to credit of Callaghan, but heard Dortigue say he had offered the agent of Callaghan a draft on Erhard, but the agent refused to accept it, in order to avoid the Mexican export duty.

Defendant proved by Stephen Powers his respectability for the last fifteen years as a merchant in Matamoras.

The defendant objected to that portion of the deposition of Evins, which relates to the order of Dortigue and acceptance by Erhard, in the latter part of Evins's above statement, because not

responsive to the interrogatory and irrelevant to the issue, and the order and acceptance were not in writing.

A jury was waived, the cause submitted to the court, and a judgment rendered for $832 73, principal, and $219 64 interest, making $1052 37, in gold and silver.

The defendant assigned as error :—

First—The overruling the demurrer.

Second—Refusal to strike out from Evins's deposition the part excepted to.

Third—Admission of Evins's evidence.

Fourth—The judgment entered for plaintiff.

*Ballinger, Jack & Mott*, for appellant.—The proof was not only a variance, but it was of facts which, if true, did not entitle plaintiff to recover, viz. : that Dortigue requested Erhard to pay $832 to plaintiff, which Erhard promised but failed to do; wherefore, his liability for the amount is alleged.

No statement or evidence that Erhard owed Dortigue; no statement or evidence of any consideration to Erhard for any such promise; a naked oral promise by Erhard to pay Dortigue's debt to Callaghan, with the further proof that no charge or entry was ever made by Erhard against Dortigue for such an assumpsit.

If these facts had been alleged precisely as proved, no cause of action would have been shown, and of course none can be made out merely by the proof, because any such promise was a *nudum pactum*.

It was within the statute of frauds, not being in writing, and there is not a scintilla of evidence of any consideration to Erhard to promise this payment for Dortigue; nothing from which any indebtedness to Dortigue can be inferred, or any obligation of Erhard. Then, there is the proof by plaintiff of the statement of Erhard from his books that no debit or entry had ever been made to Dortigue or Callaghan & Co.

Neither is there a scintilla of evidence of consideration, or of any injury to plaintiff. He gave up or released nothing; there is no such statement or inference in the case. It is perfectly evident that the debt of Callaghan & Co. remained subsisting against Dortigue. He paid Erhard nothing, and Erhard now has no demand on him, and no entry in his books connected with the transaction.

The promise of Erhard was to pay to Callaghan & Co. the debt of Dortigue; was not in writing, and was within the statute of frauds.

That the promise was of this character cannot be made more manifest by illustration.

It is within the direct letter of the statute, unless exempted by some rule of construction.

The test whether the promise is to pay the debt of another seems to be that the latter debt remains a continuing debt. Unless the debt is discharged by the acceptance of the promise, then the promise is collateral, and must be in writing. Where there is a pre-existing debt, the burthen of alleging and proving the discharge of the pre-existing debt is on the party claiming the benefit of the new promise, and unless the averment is made demurrer will lie. (See Bason, administrator, v. Hughart, 2 Tex., 476; Warren v. Smith, 24 Tex., 486; Rollison v. Hope, 18 Tex., 450.)

*Powers & Maxan*, for the appellee.—The plaintiff submits that this case involves simply a question of fact: as to whether the defendant undertook, with the plaintiff, to carry the amount in controversy to the credit of the plaintiff, after he had commenced to count out the money on the order of Dortigue?

The evidence of the witness Evins establishes this fact, and there is no conflicting testimony.

The testimony of Heitmann nowhere disputes that of Evins; and is entirely negative in its character. If indeed it has any distinguishing feature, it is in favor of the plaintiff; because he testi-

fies that Dortigue, as well as Callaghan & Co., had an open account with the defendant; thereby evincing a natural reason why the defendant should, on the order of Dortigue, credit Callaghan & Co.'s account, and debit the account of Dortigue, or at least so agree; for if he did not in fact do it, it was his own fault, and no one's else.

Now it is submitted that the question of fact in this case, as above stated, having been found for the plaintiff, such finding is conclusive in its legal effect, of binding the defendant.

Assuming the transaction as proved, then it must be regarded as a contract on the part of the defendant with the plaintiff—executed, and not executory.

"An executed contract is one in which nothing remains to be done by either party, and where the transaction is completed at the moment that the agreement is made," etc. (Story on Contracts, § 18.)

"An executed contract is one in which the object of the contract is performed." (Fletcher v. Peck, 6 Cranch., 136.)

Nor can it be pretended, under any circumstances, that this transaction comes within the statute of frauds.

"A promise to pay the debt of another, in consideration of his release from liability, is an original contract, and is not within that clause of the statute of frauds which relates to promises to answer for the debt, default or miscarriage of another."

"It is well settled that that clause has reference to promises which are distinctly collateral to the undertaking of the party originally liable." (Warren v. Smith, 24 Tex., 484; 2 Parsons on Contracts, p. 304; Bason v. Hughart, 2 Tex., 476.)

Again: "A chose in action, not evidenced by writing, or an open account, may be assigned without writing, and the assignment will pass the equitable title to the assignee; if the debtor have notice of the assignment and promise to pay the money to the assignee, the latter may sue therefor in a court of law; * * * and in his own name."

"In such case the action is not brought on the promise of the second debtor to pay the debt of the first, but upon the assignment of the claim of the first debtor against the second; and the statute of frauds is therefore inapplicable." (Rollison v. Hope, 18 Tex., 446.)

"Whenever the main purpose and object of the promissor is, not to answer for another, but to subserve some purpose of his own, his purpose is not within the statute of frauds, although it may be, in form, a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing the liability of another." (Lemmon v. Box, 20 Tex., 329; Parsons on Contracts, 5 ed., book 3, chap. 7, § 3.)

"So also where, in order to facilitate the making of an agreement, for which there was sufficient consideration between A and B, B, who received no benefit himself, became a party thereto; it was held, in an action against B, that, as the agreement was such as A would not have made, unless B had consented to be a party, there was a sufficient consideration for B to promise." (Story on Contracts, § 431, middle.)

Applying these principles to this case, the plaintiff contends that there is no pretense to bring the same within the statute of frauds; that on the contrary there was a good and valid agreement, upon legal consideration, with the defendant, and that acting upon the faith of the defendant's promise to enter the credit as proved by Mr. Evins, and his failure to so do—if so it is—gives him good cause of action herein, and the defendant is estopped from now denying it. (See Williams v. Chandler, 25 Tex., 4.)

MORRILL, C. J.—The first error assigned is in overruling defendant's demurrer.

The cause of the demurrer was that the petition did not disclose the names of the firm of Callaghan & Co.

XXXIII—12

This cause of objection was met by an amended petition, setting forth the names.

The second was in not striking out a part of the answer of the witness, Evins, to the fifth interrogatory.

On the trial the reasons assigned for striking out the answer were because it was not responsive to the question.

The question not being in the record, does not enable us to make any decision in the assigned error. It is the duty of the plaintiff in error to bring up to this court all such papers and proceedings as are necessary to enable us to see the force of his errors. Having failed to do so, we pass it by.

Third—The court erred in admitting the deposition of Evins.

This deposition was objected to in the district court, but no reason was assigned, either there or here, and of course we can consider none.

Fourth error—The court erred in entering judgment against the defendant.

The proceedings disclosed a good cause of action; the testimony fully sustained the allegations in the pleadings of plaintiff, and the judge, acting also by consent as a jury, could not legally do otherwise than render the judgment.

The argument of the counsel for plaintiff would be very much to the purpose if a foundation had been laid for it, either in the proceedings in the district court or in the errors assigned.

Parties have a right to waive, either openly or tacitly, the statutes of 29 Charles II, or 13 Elizabeth, re-enacted in this State, and having done so they must abide the consequences.

Affirmed.